Filed 7/10/26  P. v. Robles CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN FRANCISCO ROBLES,<br><br>    Defendant and Appellant. | 2d Crim. No. B344207<br>(Super. Ct. No. F000381847)<br>(San Luis Obispo County) |

Juan Francisco Robles appeals from the postjudgment order denying his motion to vacate his conviction.  (Pen. Code,[1] § 1473.7, subd. (a)(1).)  He contends his failure to understand the immigration consequences of his no contest plea was prejudicial.  We affirm.

---

[1] Undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL HISTORY[2]

In December 2005, Robles slowed the vehicle he was driving at a hotel known for narcotics activity. When contacted by police, he gave a false name and date of birth. Police found a container under the driver's seat containing nine grams of methamphetamine. Robles had $700 cash on his person. He claimed the drugs belonged to a "friend" who was purportedly in the car with him, despite no one else being present.

Robles was charged with felony transportation of a controlled substance, i.e., methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 1); a misdemeanor violation of providing false identifying information to a peace officer (§ 148.9, subd. (a); count 2); and misdemeanor driving on a suspended license (Veh. Code, § 14601.5, subd. (a); count 3). He was also charged with violating probation in a driving under the influence (DUI) case.

In January 2006, the prosecution orally amended the complaint to add count 4, felony possession of a controlled substance, i.e., methamphetamine (Health & Saf. Code, § 11377, subd. (a)). Pursuant to a negotiated disposition, Robles pleaded no contest to the suspended license and felony drug possession charges (counts 3 and 4). He agreed to a negotiated sentence of probation with 60 days in county jail, which included the violation of probation. Counts 1 and 2 were dismissed.

Before the plea was entered, the trial court advised, "If you are not a citizen of the United States, by virtue of your felony

_____

[2] Because the case was resolved without a preliminary examination or trial, the factual summary is based on the incident reports of the Paso Robles Police Department, which served as the factual basis for the no contest plea.

plea here, you could be denied citizenship, deported or excluded." Robles said he understood.

The presentencing probation report indicated Robles lived alone and had been separated from his wife for four years. His only family in the area was his 21-year-old daughter, a United States citizen. He had one sibling in Texas and 11 in Mexico. Robles told the probation officer the drugs did not belong to him and the cash was from his job. He said he intended to stay in the county and continue working.

Pursuant to the negotiated plea, the trial court placed Robles on three years' supervised probation with terms including 60 days in county jail, credit for time served of 49 days, and the remaining time to be served on weekends. The court also ordered 60 hours community service, narcotics offender registration, and fines and fees.

In 2024, Robles filed a motion to vacate his conviction (§ 1473.7, subd. (a)(1)). The motion was supported by his declaration, which stated as follows: Since his arrival in the United States at age 16, Robles had worked steadily in agriculture and construction. At the time of the plea, he had been living in the United States for 28 years, was married to a United States citizen, and had a 21-year-old U.S. citizen daughter. His attorney advised him that pleading guilty would be in his best interest and did not inform him about the immigration consequences. If he had known the immigration consequences, including mandatory deportation, he "would not have accepted the deal." Instead, he "would have requested an immigration safe plea or demanded a jury trial." He prioritized staying in the United States because it provided the best opportunities to provide for himself and his family. He did not

3

claim he had been subjected to deportation or other immigration enforcement.

The district attorney's opposition to the motion stated Robles "does not and cannot demonstrate prejudice because he would not have had an immigration-neutral plea available to him and he did not have a viable defense against the charges at trial." The opposition stated the district attorney did not have a charging policy regarding immigration status. It noted that Robles had multiple previous DUI convictions, and "it is unlikely there would be any comparable offenses to which the defendant could have pled instead."

At the hearing on the motion, the prosecutor said he did not know if the district attorney's office would have "substitute[d] non-related charges." He also stated, "I do not believe that in this case there would have been an immigration neutral alternative."

The trial court found that Robles "was not fully informed of the immigration consequences of the plea." The court found "the conviction has the potential to cause Mr. Robles to be deported," and Robles "placed importance on avoiding deportation." But the court found Robles had not shown that he had a viable defense to the charges, or that an immigration neutral disposition was available at the time of the plea. The court concluded, "[V]iewed objectively, the totality of the circumstances do not show it is reasonably probable that he would have rejected a generous plea offer and risked a lengthy state prison sentence if he had been advised of the immigration consequences of the plea. And for those reasons, I'm denying the motion."

## DISCUSSION

### Standard of review

Relief pursuant to section 1473.7 requires that the

defendant show "prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."  (§ 1473.7, subd. (a)(1).)

"We apply independent review to evaluate whether a defendant has demonstrated a reasonable probability that he would have rejected the plea offer had he understood its immigration consequences." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).)  Because no live testimony was presented, "the trial court's findings 'derive entirely from written declarations and other documents,' " and we exercise our " 'independent judgment, [to determine] whether the facts establish prejudice under section 1473.7.' " (*Id*. at p. 320.)

*Inadequacy of advisements*

Because Robles's conviction related to a controlled substance, it rendered him inadmissible to the United States (8 U.S.C. § 1182(a)(2)(A)(i)(II)), deportable (8 U.S.C. § 1227(a)(2)(B)(i)), and ineligible for the discretionary relief of cancellation of removal (8 U.S.C. § 1229b(b)(1)(C); *People v. Patterson* (2017) 2 Cal.5th 885, 895).  The trial court's advisement that there "could be" immigration consequences was therefore inadequate because deportation was mandatory.  (*Patterson*, at pp. 895–896; *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1063–1065.)  And Robles's declaration was uncontradicted that counsel did not advise him of the adverse immigration consequences. (See *Espinoza, supra*, 14 Cal.5th at p. 320.)

Robles's ignorance of the immigration consequences was an error that damaged his ability to "meaningfully understand" and "knowingly accept" those consequences.  (§ 1473.7, subd. (a)(1); *People v. Mejia* (2019) 36 Cal.App.5th 859, 871.)  Prejudice may

5

be based on "the '*defendant's own error* in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.' " (*Mejia*, at p. 871.) Thus, the trial court properly found that Robles did not meaningfully understand the immigration consequences.

Because we conclude the immigration advisement was inadequate, we need not address Robles's more specific contention that he should have been advised that adverse immigration consequences could be avoided if a first-time conviction of simple drug possession were later expunged after successfully completing probation based on Ninth Circuit authority at the time. (*Lujan-Armendariz v. Immigration and Naturalization Service* (9th Cir. 2000) 222 F.3d 728, 735–736.)[3]

But even if we reached the merits, our Supreme Court has held that a defendant need not be advised of collateral consequences, including the effect of a subsequent probation violation, when pleading guilty or no contest. (*People v. Arnold* (2004) 33 Cal.4th 294, 309–310.) Moreover, the fact that immigration consequences might later be avoided contradicts Robles's contentions that deportation was *mandatory* and the advisement that he *could be* deported was inadequate.

### *Prejudice*

In addition to showing the defendant did not meaningfully understand the immigration consequences, a defendant seeking section 1473.7 relief must demonstrate that the error is "prejudicial." The defendant must show a " 'reasonable probability that the defendant would have rejected the plea if the

---

[3] *Lujan-Armendariz* was later overruled in *Nunez-Reyes v. Holder* (9th Cir. 2011) 646 F.3d 684, 690, 694, but only regarding convictions after July 14, 2011.

defendant had correctly understood its actual or potential immigration consequences.' " (*Espinoza*, *supra*, 14 Cal.5th at p. 316.) " 'A reasonable probability does not mean more likely than not. [Citation.] Instead, it means merely a reasonable chance, which is more than an abstract possibility.' " (*People v. Padron* (2025) 109 Cal.App.5th 950, 959.) This " 'might be based either on the desire to go to trial or on the hope or expectation of negotiating a different bargain without immigration consequences.' " (*People v. Vivar* (2021) 11 Cal.5th 510, 529.) Relief under section 1473.7 may be granted even if the defendant could not reasonably expect a disposition " 'with no immigration consequences,' " if they "may have reasonably hoped to secure a plea to a charge with lesser immigration consequences." (*Padron*, at p. 965.)

" 'Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.' [Citations.] Also relevant are the defendant's probability of obtaining a more favorable outcome if [they] had rejected the plea, as well as the difference between the bargained-for term and the likely term if [they] were convicted at trial. [Citations.] These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza*, *supra*, 14 Cal.5th at pp. 320–321.) "A defendant must provide ' " "objective evidence' " ' to corroborate factual assertions" such as "contemporaneous documentation of the defendant's immigration concerns." (*Id*. at p. 321.)

There is evidence here that Robles wished to remain in the

United States and had ties here: a job, a spouse from whom he was separated, and a grown daughter. He also had ties to Mexico, including 11 siblings. But his assertion that he might have gone to trial is uncorroborated and unconvincing. He was facing up to four years in prison (Health & Saf. Code, § 11379, subd. (a)), plus a year in custody for the misdemeanors (§§ 148.9, subd. (a), 19; Veh. Code, § 14601.5, subd. (d)(1)), and whatever custody time remained for violation of his DUI probation. He accepted a favorable disposition of simple drug possession and the driver's license violation for probation and 60 days in jail, of which he had already served 49.

Robles nevertheless raises two theoretical alternative dispositions. He suggests the parties could have agreed to a plea that "could have been to a specific substance not on the federal list, making this conviction not a controlled substance offense for any purpose." In our view, this was not a viable alternative because the substance was methamphetamine, not something else. The district attorney could not ethically charge possession of a substance not supported by probable cause. (Rules Prof. Conduct, rule 3.8(a) (former rule 5-110(A).) Robles also now suggests he could have pleaded to accessory after the fact (§ 32), based on his uncorroborated claim that the drugs belonged to a "friend." But Robles has not offered " 'evidence that would have caused [him] to expect or hope a different bargain would or could have been negotiated.' " (*People v. Vivar*, *supra*, 11 Cal.5th at p. 529, italics omitted.)

Factors relevant to "whether alternative, immigration-safe dispositions were available at the time of the defendant's plea" include "the district attorney's charging policies with respect to immigration consequences, and the existence of comparable

8

offenses without immigration consequences." (*Espinoza, supra,* 14 Cal.5th at p. 323.)  Robles did not offer any evidence regarding the district attorney's disposition policies in 2006.  And it would have been unreasonable to expect a disposition with lesser immigration consequences in light of Robles's three prior DUI convictions and the fact he was on probation when he committed the current offenses.  (*Id.* at p. 325.)  The trial court properly concluded that no evidence established that the prosecution would have offered a disposition with neutral (or more favorable) immigration consequences.

Although he does not claim ineffective assistance of counsel, Robles contends that counsel should have advocated for preplea diversion (§ 1000 et seq.).  We may decline to consider this contention because it was raised for the first time in the reply brief.  (*People v. Newton* (2007) 155 Cal.App.4th 1000, 1005.)  The contention would also fail on the merits because diversion was not available for a violation of Health and Safety Code section 11379.  (§ 1000, subd. (a).)  Nor was diversion available for a violation of Health and Safety Code section 11377 where, as here, there was "evidence of a violation relating to narcotics or restricted dangerous drugs other than a violation of the sections listed in this subdivision."  (§ 1000, subd. (a)(3), as amended by Stats. 2002, ch. 545, § 5.)

Based on the totality of the circumstances and our de novo review, we conclude Robles has not shown a reasonable probability that he would have gone to trial or reasonably expected a more favorable disposition if he had meaningfully understood the consequences of his plea.  (*Espinoza, supra,* 14 Cal.5th at p. 325.)  Accordingly, we affirm the denial of the motion to withdraw his no contest plea.

9

DISPOSITION

The order denying Robles's section 1473.7 motion is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


YEGAN, Acting P. J.


McKAIG, J.*

---

    \* Judge of Ventura County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10

Rita Federman

Superior Court County of San Luis Obispo

_____

Sarah Vanessa Perez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.